**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| **CHERI ANN HUTSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. : 2:15-cv-02411-STA-cgc** |
| | ) | |
| **FEDERAL EXPRESS CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

---

### ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendant Federal Express Corporation's Motion for Summary Judgment (ECF No. 54) filed on October 3, 2016. Plaintiff Cheri Ann Hutson has responded in opposition (ECF No. 62), and Defendant has filed a reply (ECF No. 68). A jury trial is set in this matter for February 6, 2017. The parties having completed their briefing, Defendant's Motion is now ripe for determination. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED in part, DENIED in part.**

### BACKGROUND

On June 17, 2015, Plaintiff initiated this action by filing *pro se* a Complaint against Defendant Federal Express Corporation ("FedEx") and several individual FedEx employees. Plaintiff subsequently retained counsel and filed a First Amended Complaint (ECF No. 32) against FedEx only alleging a claim for gender discrimination in violation of Title VII of the Civil Rights Act of 1964. FedEx now seeks judgment as a matter of law on Plaintiff's discrimination claim. Pursuant to Local Rule 56.1(a), both parties have prepared separate

statements of facts "to assist the Court in ascertaining whether there are any material facts in dispute."[1]  A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law."[2]  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]  For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the materials in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact.[4]

The non-moving party at summary judgment is required to respond to the moving party's statement of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed."[5]  Additionally, the non-moving party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[6]  Where the non-moving asserts that a genuine dispute of material fact exists, the non-moving must support his or her contention with a "specific citation to the record."[7]  If the non-moving fails to demonstrate that a fact is disputed or simply fails to address

---

[1] Local R. 56.1(a).

[2] *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986)).

[3] *Anderson,* 477 U.S. at 248.

[4] Fed. R. Civ. P. 56(c)(1).

[5] Local R. 56.1(b).

[6] Fed. R. Civ. P. 56(c)(2).

the moving party's statement of fact properly, the Court will "consider the fact undisputed for purposes" of ruling on the Motions.[8] Under Rule 56 of the Federal Rules of Civil Procedure, the Court "need consider only the cited materials" but has discretion to "consider other materials in the record."[9]

The parties' briefing of the facts at summary judgment is voluminous. The Court finds it unnecessary to address all of the evidence found in the record. The Court can decide FedEx's Motion for Summary Judgment based on something less than all of the facts briefed by the parties. Some of the facts briefed in Plaintiff's submissions duplicate statements asserted in FedEx's submissions. FedEx contests the admissibility and relevance of many facts on which Plaintiff relies, for example, "other acts" or "me too" testimony from other women who allege that FedEx discriminated against them. Plaintiff cites this proof to show that FedEx's stated reasons for not selecting her for the position are pretextual and part of a larger pattern or practice of gender discrimination. The Court need not resolve the parties' disputes over this evidence because the Court holds that Plaintiff has created a triable issue based on proof other than the pattern or practice evidence and the "other acts" proof. Therefore, for purposes of summary judgment, the Court holds that there is no genuine dispute as to the following material facts, unless otherwise noted.

Plaintiff began working for Defendant in 1982 and has served as a Senior Manager in Feeder Aircraft Operations since January 16, 2008. (Def.'s Statement of Undisputed Facts ¶¶ 6,

---

[7] Local R. 56.1(b).

[8] Fed. R. Civ. P. 56(e)(2); *see also* Local R. 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.").

[9] Fed. R. Civ. P. 56(c)(3).

7.)  Plaintiff held a non-management position in Global Operations Control ("GOC") between 1982 and 1989.  (*Id.* ¶ 8.)  Plaintiff was promoted to a management position in GOC in 1989 and served in that capacity until she was promoted to a senior management position in GOC in 1998.  (*Id.* ¶¶ 9, 10.)  Plaintiff served as a senior manager in GOC through January 15, 2001.  (*Id.* ¶ 12.)

On July 5, 2013, Paul Tronsor ("Tronsor"), who was then the Managing Director in GOC, posted an open job position for Senior Manager GOC.  (*Id.* ¶ 14.)  Tronsor used the Senior Manager Selection System ("SMSS") process to pre-screen and interview candidates for the Senior Manager GOC position in 2013.  (*Id.* ¶ 15.)  Pursuant to the SMSS process, Tronsor determined the qualifications to be included on the preferred qualifications grid for the 2013 Senior Manager GOC position.  (*Id.* ¶ 17.)  Christina Frazier ("Frazier"), Tronsor's Matrix Human Resource Advisor, reviewed and approved the proposed grid.  (*Id.*)  A preferred qualifications grid can be used to screen the pool of applicants down to a reasonable number of candidates to interview as it may be impractical to interview all the applicants that meet the minimum qualifications.  (*Id.* ¶ 18.)  Per the SMSS guidelines, the score from the preferred qualifications grid is included in the calculation of a candidate's total interview score and has the same weight as one interview question.  (*Id.* ¶ 19.)  Plaintiff scored a perfect 100% rating on the grid, which in this case rated years of experience as a FedEx senior management, technical experience, and qualifications.  (Pl.'s Resp. to Def.'s Statement of Fact ¶ 19.)  Plaintiff and one other male were initially selected to interview for the Senior Manager GOC position.  (Def.'s Statement of Undisputed Facts ¶ 27.)

In accordance with the SMSS process, and after determining which applicants to invite for interviews, the hiring director logs into the SMSS online system and selects nine (9) core interview questions to ask during the interview.  (*Id.* ¶ 20.)  The hiring director has the discretion

to choose or create up to two additional interview questions to measure position specific competencies.  (*Id.*)  Plaintiff adds that an interviewer could skew interview questions towards the needs in the department and select interview questions that might implicate the strengths or weaknesses of certain candidates.  (Pl.'s Resp. to Def.'s Statement of Fact ¶ 20.)[10]

In accordance with the SMSS guidelines, a three-person panel conducts all senior manager interviews.  (Def.'s Statement of Undisputed Facts ¶ 21.)   After the panel interviews a candidate, the panel members independently rate the candidate's verbal ability and responses to the interview questions.  (*Id.* ¶ 22.)  The panel members record their ratings on a performance scoresheet.  (*Id.*)  The panel then has a discussion about the candidate's interview performance and the candidate's responses to each question and compares interview notes and observations against the objective measures that appear below each interview question in an effort to agree and come to a consensus on a score for each of the core interview questions, any additional position specific questions, and the candidate's verbal ability.  (*Id.*)[11]  The SMSS guidelines provide that candidates who receive a rating of 1 on any individual question should be disqualified from any further consideration for the position because a rating of 1 suggests the candidate would be unable to perform a critical part of the job at an acceptable level.  (*Id.* ¶ 23.)

---

[10] Plaintiff cites for support the declaration of Ronda Doyle (ECF No. 62-2).  Defendant has raised a number of objections to Doyle's declaration.  While not all of the statements found in Doyle's declaration appear to be admissible, Doyle's statements concerning the interview process utilized in the GOC are admissible and relevant.

[11] Plaintiff disputes Defendant's claims about the process by asserting additional facts about the scoring of her interview.  The Court finds that these facts are relevant but better addressed to the issue of whether Defendant treated Plaintiff differently than similarly situated male interview candidates.  Plaintiff's additional claims do not actually show that a dispute exists about the typical process of interviewing with a three-person panel and the panel's scoring of a candidate's interview.

Plaintiff adds that as the managing director, Tronsor had discretion to ignore the disqualification guideline. (Pl.'s Resp. to Def.'s Statement of Fact ¶ 23.)

After interviews are conducted and consensus interview scores assessed, the SMSS process requires that the hiring director log into the SMSS online system and enter the final interview scores for each of the questions asked during the interview as well as for the ten verbal ability ratings. (Def.'s Statement of Undisputed Facts ¶ 24.) Based on the scores entered, the SMSS system calculates an overall final interview score from a 1.0 up to a possible maximum of 5.0. (*Id.*)[12] The hiring director has the discretion to set a minimum final interview score to serve as a cut-off for passing or failing the interview. (*Id.* ¶ 25.) The SMSS guidelines provide that it is inappropriate to offer a position to a lower scoring candidate in order to fulfill an affirmative action goal. (*Id.* ¶ 26.)[13]

On August 12, 2013, Tronsor addressed a letter to Plaintiff advising her that she had been selected for an interview and scheduling the interview for August 19, 2013. (*Id.* ¶ 31.) Tronsor prepared an interview guide, which included the selection of nine core interview questions from a bank of questions and the creation of two position specific competency questions. (*Id.* ¶ 33.) Prior to the interviews, Tronsor set a minimum passing interview score of 3.0 out of a possible 5.0. (*Id.* ¶ 34.) Plaintiff adds that a score of 2 is considered acceptable on the scoring sheets, and

---

[12] Plaintiff adds that the scoring does not account for possible errors in the manual entry of the scores or the fact that the three-person panel may round down the scores. Plaintiff's additional claims do not actually show that FedEx's statement is disputed. There is no evidence in this case of an error in the manual entry of Plaintiff's interview scores. As for the panel's scoring of Plaintiff's interview, the Court discusses more fully below the evidence that the panel reached a consensus score following Plaintiff's interview by essentially rounding Plaintiff's scores down.

[13] Plaintiff states that it is unknown whether this guideline was in place in 2013 at the time of her interview. However, Plaintiff has not cited any evidence to support her claim. Although the Court is not convinced that the existence of the policy is actually relevant (there is no evidence that affirmative action goals were considered in Plaintiff's case), the Court finds that FedEx's statement is undisputed for purposes of summary judgment.

so Tronsor could have set 2.0 as a passing score.  (Pl.'s Resp. to Def.'s Statement of Fact ¶ 34.)

The three-person panel conducting Plaintiff's interview included Bobbi Wells, Vice President of

Safety and Airworthiness, ("Wells"), Tronsor, and Frazier.  (Def.'s Statement of Undisputed

Facts ¶ 35.)  Wells and Frazier are female.  (*Id.* ¶ 36.)

Before Plaintiff's interview, and in accordance with the SMSS guidelines, Tronsor

provided her with the Candidate Preparation Guide, which included the interview questions that

would be asked during the interview.  (*Id.* ¶ 38.)  Plaintiff was given approximately thirty (30)

minutes to review the questions and jot down notes before the interviewed.  (*Id.*)  Plaintiff adds

that her Candidate Preparation Guide was missing a preamble, which is a checklist for the senior

manager interview and the Candidate Preparation Guide.  (Pl.'s Resp. to Def.'s Statement of Fact

¶ 38.)  While Plaintiff reviewed the Candidate Preparation Guide, Tronsor, Frazier, and Wells

familiarized themselves with the nine core interview questions and the two position specific

questions to be asked during the interview.  (Def.'s Statement of Undisputed Facts ¶ 39.)

After completing Plaintiff's interview, each panel member assigned Plaintiff scores.

Frazier gave Plaintiff a total score of 21 on the nine core interview questions and the two

position specific questions and a score of 44 on her verbal ability.  (*Id.* ¶ 46.)  Wells gave

Plaintiff a total score of 21 on the nine core interview questions and the two position specific

questions and a score of 28 on her verbal ability.  (*Id.* ¶ 47.)  Tronsor gave Plaintiff a total score

of 22 on the nine core interview questions and the two position specific questions and a score of

36 on her verbal ability.  (*Id.* ¶ 48.)[14]  After they individually scored Plaintiff's interview,

---

[14] Plaintiff questions the accuracy of the scores she was assigned and raises a number of
objections to the scoring she received from the members of the interview panel.  But Plaintiff's
argument goes to whether the panel evaluated her performance fairly and objectively and failed
to give her the scores she actually earned.  FedEx has simply stated that these are the scores the
panel recorded on their scoresheets.  Nothing in Plaintiff's response to FedEx's claim shows that
the scores listed on the scoresheets were not the scores the panel members assigned to Plaintiff.

Frazier, Tronsor, and Wells discussed her answers to the interview questions in an effort to reach a consensus on a final score for the nine core interview questions, the two position specific questions, and her verbal ability. (*Id.* ¶ 49.) The panel gave Plaintiff a consensus score of 18 on the nine core interview questions and the two position specific questions and a score of 36 for her verbal ability. (*Id.* ¶ 50.) The panel gave Plaintiff a consensus score of 1 in three categories in the interview and a 1 on one of the two position specific questions. (*Id.* ¶ 56.) Under SMSS guidelines, receiving 1's should have disqualified Plaintiff from consideration, though Tronsor had discretion to waive this guideline. (*Id.*)

Each panel member voluntarily signed and dated the interview performance rating sheet to confirm their agreement with the consensus scoring for Plaintiff's interview. (*Id.* ¶ 51.) Plaintiff adds that that the panel's consensus scores were actually lower than each panel member's individual scores while the scores of the male comparator who received the position had his scores rounded up. (Pl.'s Resp. to Def.'s Statement of Fact ¶ 49.) Tronsor entered Plaintiff's consensus interview scores into the SMSS online system, which calculated Hutson's overall interview score as 1.80 out of a possible 5.0. (Def.'s Statement of Undisputed Facts ¶ 52.) Because Plaintiff failed to achieve the minimum passing interview score set by Tronsor before any interviews took place, a 3.0 or higher, Plaintiff was not offered the 2013 Senior Manager GOC position. (*Id.* ¶ 53.) According to declarations submitted by Frazier, Tronsor, and Wells, the decision not to hire Plaintiff for the 2013 Senior Manager GOC position was based solely on her poor performance during the interview. (*Id.* ¶ 54.) Both Frazier and Wells

---

The Court finds then that there is no genuine dispute that Plaintiff in fact received the scores described in Statement of Facts ¶¶ 46-48. The Court discusses more fully below Plaintiff's argument that the panel in assigning its scores treated the male candidate who received the position more favorably than Plaintiff.

deny that Tronsor influenced their scoring of Plaintiff's interview responses or that Tronsor pressured them into agreeing on the consensus scoring for Plaintiff. (*Id.* ¶ 55.)[15]

Because Plaintiff was not successful, Wells, Tronsor and Frazier conducted interviews of the second pool of applicants. (*Id.* ¶ 58.)[16] The panel posed the same nine core interview questions and two position specific questions used in Plaintiff's interview to the candidates in the second pool. (*Id.* ¶ 59.) All candidates for 2013 Senior Manager GOC, men and women, were required to submit the same information to initiate their application for the position, were given the same interview questions, had the same criteria for the prescreening process, and the same answer key for the weather position specific question. (*Id.* ¶ 60.) The panel ultimately selected Bobby Dunavant for the 2013 Senior Manager GOC position. At the time he was interviewed, Dunavant had been a Manager GOC of more than four years and had been in management at FedEx since 1996. (*Id.* ¶ 63.) Wells, Tronsor, and Frazier conducted Dunavant's interview on September 19, 2013. (*Id.* ¶ 64.)

At the conclusion of the interview, Tronsor gave Dunavant a total score of 35 on the nine core interview questions and the two position specific questions and a score of 39 on his verbal ability. (*Id.* ¶ 65.) Frazier gave Dunavant a total score of 34 on the nine core interview questions and the two position specific questions and a 38 on verbal ability. (*Id.* ¶ 66.) Wells gave Dunavant a total score of 38 on the nine core interview questions and the two position specific questions and a 44 on verbal ability. (*Id.* ¶ 67.) After they each scored Dunavant's interview,

---

[15] Plaintiff adds that Tronsor could influence who the final candidate might be and who would ultimately receive the promotion. The Court notes that the evidence cited by Plaintiff, the declaration of Ronda Doyle (ECF No. 62-2), does not state that Tronsor did so in Plaintiff's case. The Court considers how this proof might create a triable issue in its analysis of the pretext issue below.

[16] The proof shows that Plaintiff and another male candidate were initially interviewed but that neither Plaintiff nor the male candidate achieved a passing score.

Frazier, Tronsor, and Wells discussed his answers to the interview questions in an effort to reach a consensus on a final score for the nine core interview questions, the two position specific questions, and his verbal ability. (*Id.* ¶ 68.) The panel arrived at a consensus and gave Dunavant a total score of 39 on the nine core interview questions and the two position specific questions and a 39 for his verbal ability. (*Id.* ¶ 69.) Frazier, Wells, and Tronsor all voluntarily signed and dated the interview performance rating sheet to confirm their agreement with the consensus scoring for Dunavant's interview. (*Id.* ¶ 70.) Dunavant received the highest interview score of all applicants interviewed for the 2013 Senior Manager GOC position, scoring a 3.57 overall. (*Id.* ¶ 71.) Therefore, pursuant to the SMSS process, Dunavant was offered the position. (*Id.*)

In its Motion for Summary Judgment, FedEx seeks judgment as a matter of law on Plaintiff's claim for gender discrimination. FedEx first argues that the Court should grant summary judgment on any claim advanced by Plaintiff premised on a pattern or practice of gender discrimination in FedEx's hiring and promoting. According to Sixth Circuit case law, Plaintiff as an individual complainant cannot prove her discrimination claim with evidence of a pattern or practice of discrimination at FedEx. FedEx next argues that the Court should consider only events occurring after April 6, 2013. Plaintiff filed her charge of discrimination with the EEOC on January 31, 2014, and any event prior to April 6, 2013, would be outside of the 300-day filing deadline for an administrative complaint. As for the merits of her gender discrimination claim, FedEx contends that Plaintiff has no direct proof of discrimination and cannot prove a prima facie case. Plaintiff was not qualified for the Senior Manager 2013 position because she did not successfully complete the interview.

Even if Plaintiff could make out a prima facie claim of gender discrimination, FedEx argues that it had a legitimate, nondiscriminatory reason for not hiring Plaintiff, and Plaintiff

cannot prove pretext. According to FedEx, Plaintiff simply did not interview well. At summary judgment Plaintiff has no evidence to show that her interview performance was a pretext for discrimination. Plaintiff's proof of her superior qualifications is based only on her own opinion, and no matter Plaintiff's qualifications, FedEx's management hiring decisions are entitled to deference. In order to prevail, Plaintiff must show more than FedEx made an ill-considered decision. Plaintiff must prove that FedEx was motivated by gender animus. Plaintiff has no such evidence. The fact that the scoring of Plaintiff's interview involved a degree of subjectivity also fails to imply discrimination. Plaintiff was asked the same questions and evaluated under the same criteria as the male candidates for the position. Under the circumstances, Plaintiff has failed to carry her burden to prove pretext. Finally, FedEx argues that Plaintiff is not entitled to punitive damages because there is no proof that Defendant has engaged in discrimination with malice or reckless indifference. Therefore, the Court should grant FedEx judgment as a matter of law.

Plaintiff has responded in opposition to Defendant's Motion for Summary Judgment. Plaintiff begins by arguing that she can make out a prima facie claim of gender discrimination. At the first stage of the burden-shifting framework, Plaintiff has the relatively easy burden to show that she was objectively qualified for the Senior Manager GOC position. FedEx's argument that Plaintiff was not qualified because she did not perform well in her interview confuses two stages of the burden-shifting framework. Plaintiff goes on to argue that FedEx's proffered reason for its decision not to promote Plaintiff is a pretext for discrimination. Plaintiff can show that FedEx treated Dunavant more favorably in the scoring of his interview performance and his answers to the position-specific questions. Plaintiff asserts that her weather test, the second of the two position specific questions during the interview, was graded twice and

that scores marked correct in the first grading were marked incorrect on the second grading. If the panel had considered only the scores from the first grading, Plaintiff would have received a passing score. Moreover, the panel found that Plaintiff's answers on twelve of the questions were incorrect but then gave Dunavant credit for providing substantially similar answers during his interview. The panel's consensus scoring of Plaintiff's interview also tended to round Plaintiff's scores down while the panel's consensus scoring of Dunavant's interview tended to round his scores up. This disparate treatment is sufficient to establish proof of pretext. As such, Defendant is not entitled to summary judgment on Plaintiff's claim.

Plaintiff goes on to argue that other proof likewise establishes that Defendant's proffered reason is pretext. Plaintiff can show that her qualifications for the Senior Manage GOC position were clearly superior to Dunavant's qualifications. Unlike Plaintiff, Dunavant had no experience as a Senior Manager. Dunavant had about 49 months of experience in GOC while Plaintiff had Memphis and satellite control experience of almost 18 years. Plaintiff has been a licensed pilot since 1983 and had aviation-specific college education. Plaintiff had also created and implemented two control centers as a GOC leader. Consequently, Plaintiff received Five Star commendations for her work as a Manager in GOC and as a Senior Manager in GOC. Relative to Dunavant, Plaintiff was clearly the more qualified candidate. Plaintiff has also adduced evidence about Tronsor and his leadership in GOC, including allegedly discriminatory remarks made by Tronsor and the lack of advancement opportunities for female candidates in Tronsor's GOC. Plaintiff relies on the declarations of Ronda Doyle (ECF No. 62-2) and Christi Free (ECF No. 62-11), two other female employees who were denied promotions or allegedly received disparate treatment under Tronsor's supervision. Based on all of this evidence, Plaintiff argues that triable issues remain on the question of pretext.

In its reply, FedEx raises a number of objections to some of the evidence submitted by Plaintiff with her opposition brief. FedEx argues that the Court should not consider the hearsay and speculative testimony found in the declarations of Doyle and Free or in Plaintiff's own declaration. FedEx's objections are more fully developed in its responses to Plaintiff's statement of additional material facts. As for the merits of Plaintiff's gender discrimination, Defendant continues to argue that Plaintiff cannot prove pretext. Plaintiff has failed to show that Dunavant received more favorable treatment in the scoring of his interview. According to FedEx, Plaintiff has only her own subjective beliefs about the panel's scoring to support her argument. FedEx explains that Plaintiff's weather-based test was not graded twice. Each member of the interview panel grade her test individually and then discussed their grading to arrive at a consensus score. The two scoresheets for Plaintiff's weather-based test are Wells's initial scoring of the test and Tronsor's consensus scoring of the test. FedEx further argues that a comparison of Plaintiff's weather-related test and Dunavant's test show that their answers were not, as Plaintiff claims, substantially similar.

Plaintiff has also failed to show that the members of the interview panel were unduly subjective or that their grading of Plaintiff's test evidences bias. FedEx contends that Plaintiff's own measure of her qualifications and her proof of stray remarks unrelated to her bid for the Senior Manager GOC position fail to establish pretext. The Court should decline to consider any "me too" or "other acts" evidence as well as any proof on which Plaintiff relies to a pattern or practice of discrimination. As a final matter, Defendant argues that Plaintiff has abandoned her claim for punitive damages by failing to address the issue in her response brief. Therefore, the Court should grant Defendant judgment as a matter of law.

## <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17]  The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide."[18]  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party,[19] and the "judge may not make credibility determinations or weigh the evidence."[20]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[21]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[22]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[23]  In this

---

[17] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009).

[19] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[20] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[21] *Celotex*, 477 U.S. at 324.

[22] *Matsushita*, 475 U.S. at 586.

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."[24]

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[25]  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[26]

## ANALYSIS

### I. Plaintiff's Abandoned or Waived Claim for Punitive Damages

As a procedural matter, Plaintiff has failed to respond to the argument raised in FedEx's opening brief for the dismissal of Plaintiff's punitive damages claim.  FedEx asserted that Plaintiff could not prove the elements necessary to recover punitive damages.  Plaintiff did not oppose or in any way respond to Defendant's argument.  "[A] plaintiff is deemed to have abandoned a claim when [she] fails to address it in response to a motion for summary judgment."[27]  District courts in this Circuit routinely grant summary judgment as to claims a plaintiff fails to support or address in a response to a motion for summary judgment.[28]

---

[24] *Lord v. Saratoga Cap., Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[25] *Anderson*, 477 U.S. at 251–52.

[26] *Celotex*, 477 U.S. at 322.

[27] *Haddad v. Sec'y, U.S. Dept. of Homeland Sec.*, 610 F. App'x 567, 568–69 (6th Cir. 2015) (quoting *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013)).

[28] *Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 809 (M.D. Tenn. 2011); *Anglers of the Au Sable v. U.S. Forest Serv.*, 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008)*; Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005); *Kattar v. Three Rivers Area*

Defendant has raised meritorious defense to Plaintiff's prayer for punitive damages. Based on Plaintiff's waiver of her punitive damages claim and for the reasons stated in FedEx's opening memorandum, the Court holds that Defendant is entitled to judgment as a matter of law on Plaintiff's request for punitive damages. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim for punitive damages.

## II. Gender Discrimination

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because of [his] race, color, religion, sex, or national origin."[29] Where as here a plaintiff offers only circumstantial evidence of unlawful discrimination, Plaintiff has the burden to establish a prima facie case of gender discrimination by adducing evidence of the following: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably."[30] If the plaintiff can carry her burden and establish a *prima facie* case of discrimination, "the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action."[31]

---

*Hosp. Auth.*, 52 F. Supp. 2d 789, 798 n.7 (W.D. Mich. 1999). *See also Clark v. City of Dublin,* No. 05-3186, 2006 WL 1133577, at *3 (6th Cir. Apr. 27, 2006) (where the appellant did not properly respond to the arguments asserted against his ADEA and ADA claims by the appellees in their motion for summary judgment, the appellant had abandoned his ADEA and ADA claims); *Conner v. Hardee's Food Sys.,* No. 01-5679, 2003 WL 932432, at *4 (6th Cir. Mar. 6, 2003) (finding that, "Because Plaintiffs failed to brief the issue before the district court . . . Plaintiffs abandoned their . . . claim."); *Hazelwood v. Tenn. Dept. of Safety*, No. 3:05-cv-356, 2008 WL 3200720, at *8 (E.D. Tenn. Aug. 5, 2008).

[29] 42 U.S.C. § 2000e–2(a)(1).

[30] *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (quoting *Peltier v. United States,* 388 F.3d 984, 987 (6th Cir. 2004)).

[31] *Id.* (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)).

"[T]he employer's burden is satisfied if [it] simply explains what [it] has done or produc[es] evidence of legitimate nondiscriminatory reasons."[32]   At the third stage of the burden-shifting analysis, the plaintiff must come forward with evidence that the defendant's proffered reason is pretext for unlawful discrimination.[33] At the pretext stage, the plaintiff's burden "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination."[34]

Concerning Plaintiff's qualifications for the job, FedEx argues that Plaintiff was not otherwise qualified for the Senior Manager GOC position because she did not successfully complete the interview process.  Without this proof, Plaintiff cannot make out her prima facie case of gender discrimination.  FedEx's argument improperly blurs two different stages of the *McDonnell Douglas* burden-shifting framework.  FedEx claims that Plaintiff was not qualified for the promotion because she did not achieve a passing score on the nine core interview questions and the two position specific questions.  But at the same time FedEx claims that its legitimate reason for not selecting Plaintiff for the position was her failing interview score.  The Sixth Circuit has held that in anti-discrimination cases district courts should assess whether the plaintiff is "otherwise qualified" for his or her position at the *prima facie* stage without considering the employer's legitimate, nondiscriminatory reason for its adverse action against the plaintiff.[35]  The Court of Appeals has explained that "[t]o do so would bypass the burden-shifting

---

[32] *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

[33] *Jackson*, 814 F.3d at 776.

[34] *Id.* (quoting *Burdine*, 450 U.S. at 256).

[35] *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005) (applying rule in Title VII sex discrimination case); *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 585 (6th Cir. 2002) ("Instead of using the discharge justification to judge whether Cicero was qualified at the prima facie stage [of his ADEA claim], the Court should only consider the

analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination."[36]  Instead, for purposes of the plaintiff's *prima facie* showing, the Courts should only assess Plaintiff's qualifications "prior to and independent of the events that led to the adverse action."[37]  The Court finds then that FedEx's argument on this point is not persuasive.  The undisputed evidence shows that Tronsor created a preferred qualifications grid for the Senior Manager GOC position and that Plaintiff received a perfect score based on her years of experience in FedEx senior management, her technical experience, and qualifications.  This proof suffices to show that Plaintiff was qualified for the promotion.  FedEx does not dispute the other elements of Plaintiff's prima facie claim.  As a result, the Court holds that for purposes of summary judgment, Plaintiff can make out a prima facie claim of gender discrimination.

Having concluded that Plaintiff can make out a prima facie case of gender discrimination, the burden of production now shifts to FedEx to proffer a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.  The Court finds no genuine dispute on this point.  FedEx asserts that Plaintiff was not selected for the Senior Manager GOC position because of her performance during the interview.  While the parties disagree over whether FedEx's reasons

---

employer's proffered reason in the later stages of the *McDonnell Douglas* analysis."); *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 662-63 (6th Cir. 2000) (applying rule in pregnancy discrimination case).

[36] *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (*en banc*) (citing *Cline*, 206 F.3d at 660-61)).

[37] *Tysinger v. Police Dept. of City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006) (applying rule in pregnancy discrimination case) (citations omitted).  *See also Rosebrough v. Buckeye Valley High School*, 690 F.3d 427, 433 (6th Cir. 2012) (holding that "there can be no logical basis for requiring [an ADA plaintiff] to have a CDL to be 'otherwise qualified' for the position of training to obtain a CDL" where the plaintiff was hired as a school bus driver trainee but failed to obtain her commercial drivers license).

were pretextual, they appear to agree that a poor interview is a legitimate, nondiscriminatory ground for not receiving a promotion.[38]  The Court concludes then that FedEx has carried its burden on this point.

The burden now shifts back to Plaintiff to demonstrate by a preponderance of the evidence that FedEx's reason is a pretext for discrimination.  Plaintiff can make this showing by proving one of the following: (1) FedEx's proffered reason has no basis in fact, (2) FedEx's proffered reason did not actually motivate the decision to terminate Plaintiff, or (3) FedEx's proffered reason was insufficient to motivate its decision.[39]  Put another way, Plaintiff's burden "is to produce sufficient evidence from which a jury may reasonably reject the employer's explanation" and infer discrimination.[40]  Even then summary judgment for the defendant may be appropriate "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."[41]

The Court holds that triable questions of fact remain about FedEx's reasons for not

---

[38] *See Davis v. Cintas Corp.*, 717 F.3d 476, 494 (6th Cir. 2013) (holding that poor performance during interview process was legitimate, nondiscriminatory reason for not hiring); *Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626, 631 (6th Cir. 2008) (same); *Johnson v. Lockheed Martin Corp.*, 598 F .App'x 364, 369 (6th Cir. 2015) (same); *Lawroski v. Nationwide Mut. Ins. Co.*, 570 F. App'x 589, 594 (6th Cir. 2014) ("Nationwide also explained that it did not hire Lawrowski for the FBD position in Rothermel's group because of the low scores Lawroski received throughout the interview process, as well as Rothermel's negative impression of Lawroski. Nationwide's reasons are legitimate and nondiscriminatory.").

[39] *Martinez*, 703 F.3d at 915.

[40] *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012).

[41] *Griffin v. Finkbeiner*, 689 F.3d 584, 593-94 (6th Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

selecting Plaintiff for the Senior Manager GOC position. Plaintiff has adduced evidence from which a reasonable juror could find that the interview panel treated Plaintiff differently than Dunavant in the scoring of their interviews. Evidence that an employer treated a similarly situated, non-protected employee differently can be "[e]specially relevant" to the issue of pretext.[42] Moreover, the panel's grading and assessment of each candidate's interview performance was, to a greater or lesser extent, subjective. Standing alone, an employer's use of subjective employee assessments and "flexibility in determining individual components" of the subjective assessments are not suggestive of discrimination or bias.[43] Nevertheless, "inherently subjective" ratings "deserve careful scrutiny"[44] because "[s]ubjective criteria . . . sometimes make it difficult to distinguish between lawful and unlawful employment actions."[45] The issue "is whether the subjective criteria were used to disguise discriminatory action."[46]

The Court holds that Plaintiff has shown that the panel's consensus grading of her interview performance, when carefully scrutinized, was more demanding than its consensus grading of Dunvant's performance in two material ways. First, as the undisputed facts show, each member of the panel evaluated Plaintiff and Dunavant based on their individual interview performances. Each member of the panel entered a score on a scale of 1 to 5 for the candidate's

---

[42] *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016) (quoting *McDonnell Douglas*, 411 U.S. at 804).

[43] *Browning v. Dep't of the Army,* 436 F.3d 692, 697 (6th Cir. 2006).

[44] *Philbrick v. Holder*, 583 F. App'x 478, 485 (6th Cir. 2014) (citing *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.,* 690 F.2d 88, 93 (6th Cir. 1982)).

[45] *Beck v. Buckeye Pipeline Servs. Co.*, 501 F. App'x 447, 450 (6th Cir. 2012) (citation omitted).

[46] *Grano v. Dep't of Dev. of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983).

response to each of the nine core interview questions. Each panel member also entered a score on a scale of 1 to 5 for ten different behaviors observed during the interview and designed to assess the candidate's verbal ability. Once the panel members recorded their separate scores, they discussed the scores among themselves to reach a final consensus score for each of the nine core interview questions and each of the ten verbal ability behaviors. The Court notes that neither party has cited any evidence to show how Plaintiff or Dunavant answered any specific question during the interview, how the candidate's answers affected the individual scoring of the answers or the consensus scoring of the answers, what specific facts the panel considered during their consensus scoring discussions, how much time the panel spent discussing each metric, or how they finally arrived at their consensus scores for the nine core interview questions and the ten verbal ability behaviors.

What the undisputed proof does show is that Plaintiff's individual scores in multiple instances were seemingly rounded down or reduced. For example, on question 2 of the core interview question, "Planning, Organizing and Scheduling," Tronsor's individual score for Plaintiff was a 3, Wells gave Plaintiff a 2, and Frazier gave her a 3. Viewing the evidence in the light most favorable to Plaintiff, a reasonable finder of fact might expect the panel to arrive at a consensus score of 3, if only because two of three members of the panel had graded Plaintiff's interview response as a 3. But the panel arrived at a consensus score of 2. The panel reached a similar result in their consensus grading of two other core interview questions and one of the verbal ability behaviors. In their individual scoring of core interview question 3, "Confidentiality," Tronsor gave Plaintiff a score of 3, Wells gave a 2, and Frazier gave a 3; the panel's final consensus score for question 3 was a 2. And in their individual scoring of core interview question 7, "Interpersonal Relations/Teamwork and Cooperation," Tronsor gave

Plaintiff a 2, Wells gave a 3, and Frazier gave a 1. Plaintiff's consensus score on question 7 was a 1. In the consensus scoring of Plaintiff's verbal ability at behavior 10 "Did not use slang or improper words," Tronsor gave Plaintiff a 5, Wells a 4, and Frazier a 5, and the panel's final consensus score was a 4. Taking the evidence and all the reasonable inferences to be drawn from from it in the most favorable light to Plaintiff, the panel's consensus scoring did not follow mathematically from the each panel member's individual scoring and had the cumulative effect of lowering Plaintiff's raw total score by four points.

By contrast, the same panel assigned consensus scores for Dunavant's interview by consistently rounding his core interview scores up. For core interview question 2, "Planning, Organizing and Scheduling," Tronsor gave Dunavant a 3, Wells gave a 4, and Frazier gave a 3. The panel's final consensus score for Dunavant's response to question 2 was a 4. For core interview question 4, "Employee Supervision," Dunavant received a 4 from Tronsor, a 5 from Wells, and a 4 from Frazier but a final consensus score of 5. And for core interview question 8, "Attention to Detail," Dunavant received a 3 from Tronsor, a 2 from Wells, and a 2 from Frazier but a final consensus score of 3. The panel's more generous consensus scoring of Dunavant's responses to these three core interview questions resulted in Dunavant's raw total score being three points higher than it would have been if the panel had simply averaged their individual scores. Viewing this evidence in a light most favorable to Plaintiff, a reasonable juror could conclude that the panel treated Dunavant more favorably than Plaintiff by arriving at consensus scores higher than the individual panel member's scores would have otherwise suggested.

Second, careful scrutiny of the panel's grading of Plaintiff's weather-based position specific question also tends to show that the panel graded her responses according to a higher standard than the panel scored Dunavant's weather-based question. The record shows that the

weather-based position specific question was listed as "PSQ2" on each candidate's scoresheet. The weather-based question was actually a written test consisting of 35 weather-related codes, which the candidate had 15 minutes to decode. An answer key (ECF No. 62-6, Page ID 854-55) was provided to grade the weather-based question. The answer key states that each correct answer was worth 2.85 points for a total of 100 possible points. The answer key did not provide for partial credit. The raw point totals for the test were then converted to a scaled rating from 1 to 5 based on the following point scale:

Rating
95—100 = 5
90—94 = 4
85—89 = 3
80—84 = 2
79 or less = 1

The scaled rating was then recorded in the candidate's scoresheet. Plaintiff answered 22 of the 35 questions correctly and received a scaled rating of 1 on the weather-based test.[47] Dunavant answered 32 of the 35 questions correctly and received a scaled rating of 4 on the test.

The Court finds that the grading of the weather-based question was not altogether standardized in a number of material respects. The panel counted answers as incorrect when Plaintiff's answer did not precisely match the answer key but did not do so when Dunavant did not provide precisely the same answer found on the answer key. For example, the answer key indicated that the correct answer for the weather-related code "TSRA" was "light rain associated

---

[47] Plaintiff argues that her weather-based question was scored twice and that the second scoring of her question resulted in her losing more points than she did in the first scoring. Plaintiff cites for support the existence of two separate gradings of her weather-based test. But FedEx has shown through supplemental declarations submitted by Tronsor (ECF No. 68-3) and Wells (ECF No. 68-2) that the "first" grading of the test was actually completed by Wells as part of her individual scoring of the test. The "second" grading was completed by Tronsor, and his grading became the panel's consensus scoring of Plaintiff's test. Other than the existence of the two graded copies of the test, Plaintiff has offered no proof to dispute FedEx's explanation of why there were two graded versions of Plaintiff's weather-based test. Therefore, the Court finds no evidence to support Plaintiff's claim that her test was graded twice.

with thunderstorms." Plaintiff answered that "TSRA" meant "light thunderstorms and rain." Dunavant's answer for the same code was "light rain and thunderstorms." In their consensus scoring, the panel marked Plaintiff's answer as incorrect but Dunavant's as correct. The Court would add here that Wells had graded Plaintiff's answer to this code as correct in her individual scoring of Plaintiff's test. The Court is hard-pressed to understand why the panel graded the two answers differently.

Insofar as the panel graded Plaintiff's answer as incorrect because Plaintiff had transposed the words "thunderstorms" and "rain," the Court finds a number of examples of Dunavant transposing words in his answers on the weather-based question but receiving full credit from the panel any way. For example, the answer sheet indicated that the code "VCTS" meant "thunderstorms in the vicinity." The weather-based question asked about the same code twice, and both times Dunavant answered that the code meant "vacanty [sic] thunderstorm." The panel, perhaps generously, gave Dunavant full credit for his answer. And for the related code "VCSH," which the answer key translated "showers in the vicinity," Dunavant received full credit for his answer "vacanty [sic] showers." Additionally, the answer sheet stated that the code "SCT018" meant "scattered clouds at 1800 feet AGL." Dunvant answered that the code meant "clouds scattered at 1800 feet" and received full credit. The point is simply that the panel graded Dunavant's answers somewhat more favorably when he misspelled or transposed words and otherwise departed from the precise answer listed in the answer key.

A reasonable juror could find from other instances that the panel was not so lenient with Plaintiff's weather-based test. In several places the panel marked Plaintiff's answers as incorrect where she simply added a word to what was otherwise a largely correct answer and did so arguably without altering the sense or meaning of her answer. The answer key stated that the

weather-related code "BKN025CB" meant "broken clouds at 2500 feet AGL." Plaintiff answered that the code meant "cloud ceiling at 2500 feet broken with cumulonimbus clouds" and had her answer marked wrong. Dunavant answered that the same code meant "clouds broken at 2500 feet combulus [sic] nimbus" and had his answer marked correct. The panel apparently concluded that Plaintiff's use of the word "ceiling" altered the sense of her answer. It is not clear to the Court though why the panel treated the two answers differently. In fact, Wells marked Plaintiff's answers as correct in her individual grading of the test (ECF No. 68-2). The discrepancy matters a great deal because the weather-related test had five more questions all involving the code "BKN---" where the correct answer called for "clouds broken at _____ feet." For each question, Plaintiff answered "ceiling broken" instead of "clouds broken" and had her answers marked as incorrect. In other words, Plaintiff was penalized for using the wrong word in a question that tested essentially the same knowledge six different times, causing her to miss 17 total points on her test.

Furthermore, Plaintiff missed five more questions where the same code, "P6SM," was simply repeated five times on the test. The answer key stated that the the correct answer was "visibility 6 or more miles," meaning arguably visibility at a distance of both six miles and beyond. Plaintiff answered "visibility 6 statute miles" each of the five times the code was repeated as a question on the test. Plaintiff was not given any credit for her answer and consequently missed the same question five times, presumably because her answer suggested visibility at six miles and only six miles. Dunavant, on the other hand, answered the same question "visibility greater than 6 statute miles" and received credit for his answer each time the question was repeated on the test. FedEx argues that Dunavant's answer was more nearly correct than Plaintiff's, and so the panel's grading of Plaintiff's answer was reasonable and entitled to a

measure of deference. The problem lies in the fact that both candidates inserted "statute" into their respective answers when the word "statute" was not part of the answer provided in the answer key. What is more, a reasonable juror could find that both candidates provided answers that were only partially correct: Plaintiff mistakenly answered that the code meant visibility at six miles (and no more), Dunavant that the code meant more than six miles (and no less). A plain reading of the answer key suggests that each candidate was only half right. Again, the discrepancy matters because Plaintiff had the same question marked incorrect five times on her test and lost 14 points as a result. Dunavant received full credit for his response for each time the same code was repeated on the test.

The Court concludes that the subjective nature of the interview and the obvious inconsistencies in the consensus scoring of Plaintiff's responses to the nine core interview questions and the ten verbal ability behaviors as well as the scoring of Plaintiff's weather-based test satisfy Plaintiff's burden at the pretext stage to show that FedEx treated Dunavant more favorably than Plaintiff.[48] FedEx raises several arguments to resist this conclusion, all of which go to the weight of the evidence and are ultimately not persuasive. FedEx emphasizes that Plaintiff received consensus scores of 1 for two different core interview questions, question 1 "Professionalism/Conflict Management" and question 4 "Employee Supervision."[49] Defendant argues that these low scores disqualified Plaintiff under SMSS guidelines from further

---

[48] *Cf. Lopez v. Am. Family Ins. Co.*, 618 F. App'x 794, 804 (6th Cir. 2015) (finding that the plaintiff had failed to show "anything so irregular" in the employer's subjective scoring of the plaintiff's employment history, which would create an inference of discrimination).

[49] Plaintiff also received a consensus score of 1 on question 7 "Interpersonal Relations/Teamwork and Cooperation." But as previously noted, the individual panel scores for Plaintiff on question 7 were a 2, 3, and 1, respectively. The fact that the panel arrived at a consensus score of 1 by essentially rounding down suggests that Plaintiff was held to a higher standard.

consideration. However, other proof in the record shows that Tronsor believed he had discretion to waive this guideline and consider a low-scoring candidate anyway. In fact, Tronsor testified that he had determined before the interviews that a score of 1 on a single question would not be disqualifying but that if any candidate received multiple 1's "they weren't going to get the job."[50] If anything, the proof that Tronsor made a predetermination about the effect of multiple 1's, the panel gave Plaintiff multiple 1's, and the panel arguably graded Plaintiff by a different standard than it graded Dunavant only reinforces the Court's conclusion that a jury should resolve the disputed facts over motive and pretext.

FedEx further argues that a narrow focus on the subjectivity of the interview assessment overlooks the following facts: (1) the panel was comprised of two female members; (2) both Wells and Frazier testified that Plaintiff did not interview well; and (3) both Wells and Frazier testified that Plaintiff was not selected for the position only because of her poor interview performance, and not for some improper reason. FedEx highlights Plaintiff's testimony where she acknowledged that her interview could have been better. It is true that these facts undoubtedly cut against any inference of gender discrimination or bias.[51] But this proof and any inferences reasonably drawn from it go to the weight of the evidence and the strength of any inference of improper motive. It does not rebut as matter of law other evidence that suggests pretext, specifically, the panel's assessment of Plaintiff's performance under a different standard than it assessed Dunavant's. The weight to be accorded this evidence is, of course, a question for a jury to decide.

_____

[50] Tronsor Dep. 96:1-19, Sept. 1, 2016 (ECF No. 62-5).

[51] *Reid v. Mich. Dept. of Corrections*, 101 F. App'x 116, 120 (6th Cir. 2004) ("All of the panelists submitted affidavits or deposition testimony stating that they recommended the candidate who was the most qualified for the position and that race and gender were not factors in their decision-making process. The panels that conducted and scored the interviews were comprised of both males and females, whites and African-Americans.").

Finally, FedEx contends that Plaintiff invites the Court "to override FedEx's business decision that her answers were incorrect."[52] To be sure, the Sixth Circuit has recognized an employer like FedEx's "greater flexibility in management-level employment decisions"[53] and has refused to intervene "as a super personnel department, overseeing and second guessing employers' business decisions."[54] Still, the Court of Appeals has held that "[a]n employer's business judgment . . . is not an absolute defense to unlawful discrimination."[55] This means that "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation."[56] And where as here a subjective assessment, namely, the scoring of Plaintiff's interview and weather-based test, completely dictates the employment action, "decisions made on the basis of subjective criteria, such as whether an employee is an effective manager, can provide a ready mechanism for discrimination, and thus such decisions are carefully scrutinized."[57] The Court disagrees then that a closer examination of the panel's consensus scoring of Plaintiff's interview improperly encroaches on FedEx business prerogatives.

---

[52] Def.'s Reply 6 (ECF No. 68).

[53] *Carter v. Toyota Tsusho Am., Inc.*, 529 F. App'x 601, 611 (6th Cir. 2013) (quoting *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)); *see also Horn v. City of Cleveland*, No. 16-3175, 2017 WL 56752, at *6 (6th Cir. Jan. 5, 2017) (per curiam).

[54] *Bender v. Hecht's Dep't Stores,* 455 F.3d 612, 627 (6th Cir. 2006) (internal quotation marks omitted).

[55] *Wexler*, 317 F.3d at 576.

[56] *Id.*

[57] *Idemudia v. J.P. Morgan Chase,* 434 F. App'x 495, 504–05 (6th Cir. 2011).

Having concluded that the undisputed evidence precludes judgment as a matter of law, Defendant's Motion for Summary Judgment must be **DENIED** as to Plaintiff's gender discrimination claim. Because the Court can decide Plaintiff's gender discrimination claim and the pretext issue on the basis of Plaintiff's disparate treatment, the Court declines to reach the evidence cited and discussed by the parties concerning Plaintiff's qualifications relative to Dunavant's and the evidence of "other acts" of gender discrimination at FedEx.

## CONCLUSION

FedEx's is entitled to judgment as a matter of law on Plaintiff's claim for punitive damages. However, questions of fact remain as to Plaintiff's gender discrimination claim. Therefore, Defendant's Motion for Summary Judgment is **GRANTED in part, DENIED in part**.

**IT IS SO ORDERED.**

                                        **s/ S. Thomas Anderson**
                                        S. THOMAS ANDERSON
                                        UNITED STATES DISTRICT JUDGE

                                        Date: January 23, 2017.